# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

GRADY DALMIDA,

              Petitioner,          :     Case No. 1:17-cv-488

     - vs -                       District Judge Susan J. Dlott
                                     Magistrate Judge Michael R. Merz

Warden,
  Toledo Correctional Institution
                                 :
              Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought by Petitioner Grady Dalmida with the assistance of counsel. It is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 13), the Return of Writ (ECF No. 14), and Petitioner's Reply (ECF No. 16). The reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division of this Court.

**Litigation History**

Petitioner was indicted on August 17, 2012, by a Hamilton County grand jury for aggravated robbery, robbery, two counts of felonious assault, and having a weapon under disability via complicity (State Court Record, ECF No. 13, Ex. 1, PageID 143, *et seq.*)  After conviction, the trial court merged the two robbery counts and the two felonious assault counts and sentenced

1

Dalmida to eleven years concurrent imprisonment, follow by three years consecutive for the weapons charge. Dalmida appealed to the First District Court of Appeals which affirmed. *State v. Dalmida*, 2015-Ohio-4995 (1ˢᵗ Dist. Dec. 4, 2015), appellate jurisdiction declined, 145 Ohio St. 3d 1458 (2016).

Dalmida filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on June 8, 2015, while the direct appeal was pending. The trial court denied relief and Dalmida again appealed, but the First District affirmed. *State v. Dalmida*, Case No. C-160674 (1ˢᵗ Dist. Dec. 29, 2017)(unreported; copy at State Court Record, ECF No. 13, Ex. 32, PageID 523, *et seq.*), appellate jurisdiction declined, 152 Ohio St. 3d 1480 (2018).

Dalmida had filed his Petition in this Court on July 20, 2017, while his post-conviction petition was pending in the state court (ECF No. 1). On Magistrate Judge Bowman's recommendation, the Court stayed these proceedings pending exhaustion of state court remedies (ECF No. 8-12). The case was reinstated September 19, 2018 (ECF No. 12) and became ripe for decision when Petitioner's Reply was filed February 1, 2019 (ECF No. 16).

The Petition pleads the following grounds for relief:

> **Ground One:** The state courts unreasonably determined the facts and ruled contrary to or unreasonably applied clearly established Supreme Court precedent concerning Dalmida's constitutional rights to due process and a fair trial by denying Dalmida's motion to suppress the victim's identification of Dalmida despite the suggestive nature of the photo lineup procedures and the unreliability of the resulting identification and failing to consider law enforcement's noncompliance with Ohio law concerning photo lineup procedures.
>
> **Ground Two**: The state courts ruled contrary to and unreasonably applied Dalmida's constitutional rights to appeal (and thus his federal constitutional rights to due process and the effective assistance of counsel, as well) by permitting his conviction to stand

despite the loss of the photo lineups: (1) pursuant to which the only eyewitness identified Dalmida; and (2) which the trial court determined were neither suggestive nor resulted in an unreliable identification of Dalmida.

**Ground Three**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to a trial by jury, due process, a fair trial, to have his guilt proven beyond a reasonable doubt, and to confrontation by failing to instruct/upholding the failure to instruct the jury about the elements of constructive possession for the weapon-under-disability offense. As a result, a jury never made a determination as to Dalmida's *mens rea* as to his own actual or constructive possession of the firearm.

**Ground Four**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to a grand jury indictment, due process, a fair trial, confrontation, and to have his guilt proven beyond a reasonable doubt by upholding the indictment, which failed to properly charge the weapon-under disability offense.

**Ground Five**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to a grand jury indictment, due process, a fair trial, confrontation, and to have his guilt proven beyond a reasonable doubt by sustaining Dalmida's conviction when insufficient evidence exists to demonstrate that Dalmida actually possessed a weapon under disability or was complicit in his co-defendant's possession of a weapon under disability.

**Ground Six:** The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process, a jury trial, confrontation, to have his guilt proven beyond a reasonable doubt, to notice of the charges, and to a grand jury indictment by failing to issue/upholding the failure to issue a constructive possession jury instruction in reference to the weapon-under-disability charge. By doing so, the state courts created/upheld a fatal variance between the indictment and the state's evidence, and/or a constructive amendment of the indictment.

**Ground Seven**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process, a fair trial by an impartial jury, and the presumption of innocence by forcing him to stand trial before a jury while wearing his jail uniform.

**Ground Eight:** The state courts ruled contrary to or unreasonably applied *Strickland* and Dalmida's right to the effective assistance of counsel because trial counsel committed a series of omissions concerning case-determinative issues, and Dalmida suffered the ultimate prejudice as a result of trial counsel's failures.

(1) by failing to present evidence of, and confront the state's witnesses about, law enforcement's failure to comply with Ohio law regarding photo lineup procedure, and to do so in both the suppression hearing and the trial;

(2) by failing to present evidence and confront the state's witnesses in the suppression hearing and at trial regarding Hawkins' identification of a suspect other than Dalmida;

(3) by failing to request a mandatory jury instruction regarding law enforcement's failure to comply with Ohio law concerning photo lineup procedure and its impact on the reliability of Hawkins' identification of Dalmida;

(4) by failing to object to errors in the jury instruction and/or indictment regarding the weapon-under-disability charge;

(5) by failing to object to Dalmida appearing at trial in his jail uniform and/or failing to obtain Dalmida's civilian clothing from the Justice Center; and

(6) by failing to object to the court's improper sentencing.

(7) for failing to object to the State expert's testimony as unreliable and scientifically invalid and unsupportable;

(8) for failing to cross-examine the State expert about his false conclusions that gunshot residue or a substance that looked like gunshot residue was present on Dalmida's hands; that Dalmida must have been less than ten feet from the gunshot to have become covered with the purported gunshot residue; and how gunshot residue particles transfer;

(9) for failing to request the undisclosed documents underlying the State's gunshot residue testing and conclusions, and to cross-examine him based on those documents, such as questioning him about the identification of other potential sources for the particles; and questioning him about gunshot residue being potentially

4

eliminated as a source depending on the data in the undisclosed documents; and

(10) for failing to present evidence: (a) impeaching the State expert; (b) demonstrating the scientific invalidity of the State expert's testimony through testimony of a defense expert; (c) potentially explaining other sources for the barium and lead particles, aside from gunshot residue; (d) explaining the scientific invalidity of the three to less-than-ten-feet range of the gunshot for particles to fall within discussed by the State expert and identifying the actual 13.5 to 18 meter range explained by John Kilty; (e) accurately explaining the transference of gunshot residue particles.

**Ground Nine**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process and protection against double jeopardy by failing to merge as allied offenses of similar import the weapon-under disability charge with all the robbery and felonious assault counts.

**Ground Ten**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process and protection against double jeopardy by failing to merge as allied offenses of similar import all the robbery and felonious assault counts.

**Ground Eleven**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process per *Brady v. Maryland*, to confront all state witnesses and evidence, and to present a defense when the state courts upheld Dalmida's convictions despite the state's failure to disclose the documents underlying the gunshot-residue (GSR) analysis conducted prior to trial. The defense expert's affidavit demonstrates the exculpatory nature of the lab notes.

**Ground Twelve**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to due process per *Napue v. Illinois* when the state courts (1) permitted the state expert to give scientifically unsupportable, false testimony regarding the nature of the particles collected from Dalmida's hands; and (2) upheld Dalmida's convictions despite being presented with evidence in Dalmida's post-conviction petition that the State expert gave scientifically unsupportable, false testimony regarding the nature of the particles collected from Dalmida's hands.

**Ground Thirteen**: The state courts ruled contrary to or unreasonably applied Dalmida's constitutional rights to fully confront all of the State's evidence/witnesses and to present a defense by permitting the state expert to give scientifically unsupportable, false testimony regarding the nature of the particles collected from Dalmida's hands and by upholding Dalmida's convictions despite the *Brady* and *Napue* violations described in Grounds for Relief 11 and 12.

**Ground Fourteen**: The state courts ruled contrary to or unreasonably applied Dalmida's due process and confrontation rights by upholding his convictions despite that they are based on inaccurate, scientifically unsupportable, and unreliable evidence concerning the particles collected from Dalmida's hands.

(Petition, ECF No. 1-1, PageID 39, 47, 54, 62, 65, 67, 70, 77, 81, 87, 91, 94, 96.)

# Analysis

**Ground One: Suggestive and Unreliable Eyewitness Identification**

In his First Ground for Relief Dalmida claims his constitutional rights were violated when the trial court failed (1) to suppress the eyewitness identification which was the result of a suggestive photo lineup, and (2) to consider the failure of law enforcement to comply with Ohio's law concerning photo lineup procedures.

On direct appeal, Dalmida raised three assignments of error relating to the pre-trial identification: "(1) his rights were violated with regard to the trial court's treatment of the photo-lineup procedures used, (2) the trial court erred when it did not give a jury instruction on noncompliance with photo-lineup procedures, (3) his rights were violated when the photo lineups

were lost," 2015-Ohio-4995 at ¶ 2.  The First District decided these claims as follows:

## II. Photo Lineup

[*P7]  Dalmida's first three assignments of error essentially argue that his constitutional rights were violated when the photo-lineup procedures were not followed and the original lineups were lost.

[*P8]   R.C. 2933.83 requires law enforcement to use specific procedures for conducting lineups. This includes using a blind administrator, maintaining written records of the names, dates, and witnesses involved, and informing the eyewitnesses that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is. R.C. 2933.83(B)(1)—(5). Dalmida argues that the lineups and procedures were unduly suggestive and generated an unreliable identification. To support his argument, he points to the officer's failure to obtain a contemporaneous confidence statement from Hawkins, and that Hawkins had viewed Dalmida's picture on the news as a suspect two or three times prior to the lineup. The trial court considered all of this information during the motion to suppress and stated that the lineup was not unduly suggestive.

[*P9]  The statute provides that the individual conducting the lineup must make a written record  that includes, among other information, the "identification and nonidentification results obtained during the lineup, signed by the eyewitnesses, including the eyewitnesses' confidence statements made immediately at the time of identification." R.C. 2933.83(B). And the record contains no indication that a contemporaneous confidence statement was procured, or that the jury was instructed on the failure to obtain such a statement.

[*P10]  However,  an alleged violation of R.C. 2933.83 alone is not a valid basis for suppression of identification testimony. *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8. Instead, cross-examination regarding the procedures used is the proper remedy. Id. A trial court will suppress identification testimony when the identification procedure used "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Woods*, 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, ¶ 25, quoting *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Because the question of whether identification

testimony is admissible is based on reliability, if the identification is reliable it is admissible even if the identification procedure was suggestive. *Woods* at ¶ 25. The defendant bears the burden of proving (1) that the procedures used were both suggestive and unnecessary and (2) that the testimony was or will be unreliable under the totality-of-the-circumstances test. *State v. Brown*, 1st Dist. Hamilton No. C-930217, 1994 Ohio App. LEXIS 3560, *32 (Aug. 17, 1994). Additionally, Dalmida forfeited any argument with regard to the suggestiveness of the photographs, because trial counsel objected only to the identification process, not the photographs. Under the plain-error standard, an appellate court will reverse a judgment only where the outcome clearly would have been different absent the alleged error. *State v. Miller*, 1st Dist. Hamilton No. C-070691, 2008-Ohio-5899, ¶ 22.

[*P11]  Dalmida complains that the jury should have been instructed on the officer's noncompliance with the identification statute, but since Dalmida never requested a jury instruction on that matter, and did not object to the jury instructions given at trial, this issue is also reviewed for plain error. See Crim.R. 30(A); *State v. Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, ¶ 21. He contends the failure to give this unrequested jury instruction is highly prejudicial, because this case hinged entirely on a single eyewitness's testimony. But we disagree. The state called nine witnesses and admitted eight pieces of evidence. Further, when asked at the motion-to-suppress hearing, Hawkins stated that he was 100 percent certain his identification was correct. The defendant had the victim's blood on his shirt and contradicted himself as to how the blood got there. The court held a hearing on the motion to suppress the identification and found that nothing warranted suppression.

[*P12]  The only case Dalmida cites to support his contention that the loss of evidence warrants reversal is *State v. Harper*, 1st Dist. Hamilton No. C-130134, 2013-Ohio-5217. But there, this court found that because the officer deferred to the video in his testimony, without the DVD recording of the events the record lacked sufficient evidence to convict the defendant of resisting arrest. Here, the record indicates neither side ever offered the photo arrays into evidence. Since they were never admitted, the lineups would never be part of the appellate record. See App.R. 9(A)(1); *State v. Zhovner*, 3d Dist. Auglaize No. 2-12-13, 2013-Ohio-749, ¶ 11, 987 N.E.2d 333.

[*P13]  We find no merit in Dalmida's first three assignments of error, and therefore, overrule them.

*State v. Dalmida*, 2015-Ohio-4995.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. In Ground One Dalmida argues the state court decisions are not entitled to AEDPA deference on all three of these bases.

### 1.    Violation of Ohio Revised Code § 2933.83.

Most of the First District's decision on the first three assignments of error is directed to claimed violation of Ohio's photo lineup procedures. On its face, the First Ground for Relief posits error in that decision as a basis for habeas relief. The Warden correctly notes that this Court cannot grant habeas relief for violations of state law, but only for violations of the federal Constitution. (Return, ECF No. 14, PageID 1329); 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). Dalmida makes no claim here that the procedures in Ohio Revised Code § 2933.83 are constitutionally compelled. In contrast to the text of Ground One as written, which appears to base a claim directly on violation of Ohio law, Dalmida states in his Reply:

> Dalmida does not rely on violations of state law and procedure as
> the Warden suggests. State law is referred to only to emphasize
> factors that impact the reliability determination and trial counsel's
> constitutional ineffectiveness by failing to pursue state law
> recourses that could have highlighted to the jury the unreliable
> nature of Hawkins' identification of Dalmida.

(ECF No. 16, PageID 1401.) Thus Petitioner has backed away from a claim that failure to follow

state procedures was a constitutional violation.

Because the procedures mandated by the General Assembly for conducting photo lineups

are laudatory and aimed at a major cause of wrongful conviction, it is regrettable that they were

not followed here to the letter. But that was not a constitutional violation that can be remedied in

federal habeas corpus.

### 2.       Was the Pretrial Identification Unconstitutional?

To show that a pretrial identification violates his constitutional rights, a defendant must

first show that the identification procedure was suggestive. An identification procedure violates a

defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of

irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

Deciding a motion to suppress is a two-step process. The trial court must first decide if the

procedure used by the police was unduly suggestive. *Simmons v. United States,* 390 U.S. 377

(1968); *Ledbetter v. Edwards,* 35 F.3d 1062 (6th Cir. 1994). It is the likelihood of misidentification

that violates a criminal defendant's due process rights. *Neil v. Biggers*, 409 U.S. 188 (1972).

If a trial court finds the procedure was impermissibly suggestive, it must evaluate the

totality of the circumstances to determine whether the identification is nonetheless reliable enough.

*United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).  If so, it is still admissible.  *Howard,* 405 F.3d at 469, 472.  The factors to be considered in assessing the reliability of the identification include:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification.  *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil*, 409 U.S. at 199-200.

The First District's decision on constitutionality of the pretrial identification appears to be consistent with this law, indicating the two-stage process to be followed.  *Dalmida,* 2015-Ohio-4995 at ¶ 10.  Petitioner does not suggest any Supreme Court precedent that is contrary to this portion of the decision.  As to suggestiveness, Dalmida conflated this issue with reliability on direct appeal, arguing only the reliability factors from *Manson* (Appellant's Amended Brief, State Court Record, ECF No. 13, Ex. 18, PageID 264).  The record on appeal did not include the original photographs used for identification; apparently they were lost sometime between the trial judge's taking them into his possession at the end of the suppression hearing and the time the record on appeal was made up.  Dalmida complained about their absence, but the First District found any claim that the photographs themselves were suggestive was forfeited because Dalmida had not claimed in the trial the photographs were suggestive, but rather that the process used was suggestive.  *Dalmida, supra*, at ¶10.  Petitioner does not suggest that conclusion by the First District is somehow contradicted by the record; he points to no place in the record where counsel claimed the photographs themselves were suggestive, *e.g*., because they were all of white males except for Dalmida.

**Suggestiveness Prong**

Respondent argues Dalmida's claim on suggestiveness is procedurally defaulted for want of a contemporaneous objection that the photographs themselves were suggestive.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural

rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman,* 501 U.S., at 731-732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
. . . .
Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

there was "cause" for him to not follow the procedural rule and that
he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule requiring that parties must preserve errors for appeal

by calling them to the attention of the trial court at a time when the error could have been avoided

or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus;

*see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).  The rule was enforced by the First District

in this case and the Sixth Circuit has repeatedly held the contemporaneous objection rule is an

adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th

Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632

F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.*

*Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason*

*v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001);

*Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

*See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301,

315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.2010).

The First District enforced the contemporaneous objection rule against Dalmida by

refusing to review his suggestiveness claim.  While it also concluded there was no plain error, it

does not give any analysis of the suggestiveness claim.  Review for plain error is, of course,

enforcement of a procedural default, not a waiver of it.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 337

(6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d

754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422

F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Dalmida argues his procedural default is excused by ineffective assistance of trial counsel (Reply, ECF No. 16, PageID 1382). He has pleaded ten sub-claims of ineffective assistance of trial counsel, *id.*, mirroring the Petition, and it appears he intends the first sub-claim to relate to the procedural default at issue with the suggestiveness prong. That sub-claim reads:

> [T]rial counsel rendered constitutionally ineffective assistance in violation of Dalmida's Sixth Amendment right . . . (1) by failing to present evidence of, and confront the state's witnesses about, law enforcement's failure to comply with Ohio law regarding photo lineup procedure, and to do so in both the suppression hearing and the trial.

*Id.* (footnote omitted). But this claim does not speak in any way to reasons that the photo array may have been suggestive. Dalmida had to prove suggestiveness as the first prong of his motion to suppress. What does he now suggest his trial attorney should have done to show suggestiveness the omission of which it was ineffective assistance of trial counsel?

This sub-claim of ineffective assistance of trial counsel is itself procedurally defaulted. To rely on ineffective assistance of trial counsel as excusing cause, a habeas petitioner must have properly presented that claim to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000). In Ohio, ineffective assistance of trial counsel claims which can be shown from the direct appeal record must be presented on direct appeal or be later barred by *res judicata. State v. Perry*, 10 Ohio St. 2d 175 (1967). Dalmida did raise ineffective assistance of trial counsel on direct appeal, but made no claim it was ineffective assistance of trial counsel to fail to present more or different evidence regarding suggestiveness. *Dalmida, supra*, at ¶ 22.

Dalmida also claims his procedural default is excused by his actual innocence (Reply, ECF No. 16, PageID 1389). He acknowledges, as the Warden claims, that the standard for an actual innocence claim is set by *Schlup v. Delo*, 513 U.S. 298 (1995). In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit explicated the *Schlup* standard:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005)(some parallel citations omitted).

To support his actual innocence claim, Dalmida relies on the post-conviction opinion of former FBI agent John Kilty (Affidavit of John W. Kilty, attached to Supplement to Petition for Post-Conviction Relief, State Court Record ECF No. 13, PageID 434-38). At the time of his Affidavit in 2015, he had been retired from the FBI for approximately twenty-eight years. Prior to retirement, he had worked at the FBI Laboratory for twenty-two years; since retirement his practice has been limited to consultation and expert testimony. He read the report of Hamilton

County Coroner's Crime Laboratory trace evidence examiner Michael Trimpe in this case, but not any of the background work product behind it, without which he averred Trimpe's conclusion that particles lifted from Dalmida's hands "looked like gunshot residue" cannot be verified.  *Id.* at ¶ 11, PageID 436.  Kilty noted that Trimpe had eliminated fireworks and brake pads as possible sources of the particles, but opined that "[e]liminating two possible sources does not eliminate other possible sources, even if such elimination was [sic] a possibility."  A key paragraph reads:

> 9.  In the absence of any three-component particles or additional two-component (lead-antimony, barium-antimony) particles, it is not scientifically supportable to say that the "several particles" lifted from Mr. Dalmida's hands were "gunshot residue." It is also not scientifically supportable to say that that this minimal population of lead-barium particles "looks like gunshot residue." While lead-barium particles can be a part of a population of gunshot residue, the absence of three-component particles and the other two-component particles (lead-antimony, barium-antimony) is, in my opinion, seriously inconclusive in determining if such a minimal population should be considered as looking like gunshot residue or primer residue. ("Gunshot residue" and "primer residue" are used interchangeably in this affidavit as they are in the Laboratory Report.]

(ECF No. 13 at PageID 435.)  In addition, Kilty criticized Trimpe's language as expressing more scientific certainty than was possible and how difficult it would be to come to scientific conclusions without examining the work product behind Trimpe's report.

In the Magistrate Judge's opinion, the Kilty Affidfavit does not show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.  Kilty provides relevant considerations that might have been used on cross-examination of Trimpe to undercut the confidence with which he gave his opinions, but by his own admission, the particles found were "consistent with gunshot residue."  (ECF No. 13,¶ 6.) A reasonable juror, understanding that Mr. Kilty makes his living as an expert witness and that he

had not examined Trimpe's work product, would not necessarily have rejected Trimpe's testimony altogether and there was a good deal of additional evidence of Dalmida's guilt.

**Reliability Prong**

As to the reliability prong of the standard, the victim-witness (Hawkins) had ample opportunity to observe Dalmida at the time of the crime (several minutes), was focused on his attackers, and was certain of his identification. Dalmida points this Court to no evidence on the time between the crime and the identification or any prior description Hawkins may have given (See Reply, ECF No. 16, PageID 1393).

Petitioner points to other evidence which was properly introduced to undermine the ultimate credibility of the victim's identification, but that properly goes to weight, not admissibility. One major red herring in Dalmida's argument is that his claim to have been at the crime scene as a Good Samaritan somehow undercuts Hawkins' identification. The Magistrate Judge disagrees. Although he did not testify at the suppression hearing, Dalmida did testify at trial, taking a risk most convicted felons do not take. Presumably he did so because he had to explain how the victim's blood got onto his clothes. While Dalmida's Good Samaritan explanation could have exonerated him from the crime, it does not make the identification unreliable. In fact, the blood on his shirt helps to confirm the reliability of the identification: it was Dalmida whom Hawkins saw, not someone else, regardless of Dalmida's motives.

In sum, part of Dalmida's Ground One (violation of Ohio Revised Code § 2933.83) is not cognizable in habeas, part (suggestiveness of the identification procedure) is procedurally

defaulted, and part (unreliability) is without merit as the First District's decision on this point is not an objectively unreasonable application of *Neil* and *Manson*.

**Ground Two:  Loss of the Original Line-Up Photos**

In his Second Ground for Relief, Dalmida claims loss of the original line-up photos deprived him of his constitutional right to appeal.

The factual basis of this claim is that in some unexplained way the original photo lineup was lost between the time it came into the trial judge's possession at the conclusion of the motion to suppress hearing and the time the record was made up for appeal.  The suppression hearing was held January 27, 2014, before Common Pleas Judge Carl Stich (State Court Record, ECF No. 13-1, PageID 562).  Judge Stich was still presiding over the case when it went to trial in July 2014 and at the imposition of sentence in August 2014.  *Id.* at PageID 647, 1272.  He appointed present counsel to represent Petitioner on appeal shortly after the verdict (Entry, State Court Record, ECF No. 13, PageID 175).  But counsel reported the original lineup exhibits missing to the First District February 20, 2015.  *Id.* at Ex. 12.  Dalmida makes no claim that the exhibits were missing as the result of any misconduct by state officials.

Petitioner argues Grounds One and Two together in his Reply (ECF No. 16, PageID 1391). He contends the loss of the original lineup photographs deprived him of his rights to due process and a fair trial.  *Id.*  He supports this claim with no Supreme Court precedent at all.

There is no federal constitutional right to appeal criminal verdicts for error review.

*McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339,

355 (6th Cir. 2005); *Halbert v. Michigan*, 545 U.S. 605 (2005). "Due process does not require a

State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995). Of course,

when it does provide a right to appeal, the State cannot discriminate against the poor by failing to

provide the necessary transcript. *Griffin v. Illinois*, 351 U.S. 12 (1956). Counsel must be appointed

on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963).

However, the logic of Petitioner's position is that a conviction must be reversed or an

unconditional writ of habeas corpus granted when the court of appeals, in a jurisdiction that grants

appeals for error review, does not have before it all the evidence the trial court considered. There

is simply no Supreme Court precedent that comes anywhere near holding as Petitioner suggests.

The only case cited by Petitioner to the First District on this point was *State v. Harper,* 2013-Ohio-

4217 (1st Dist. Nov. 27, 2013). The court distinguished that case by noting that, without the omitted

video, there was no evidence in the record sufficient for conviction. *Dalmida,* 2015-Ohio-4995at

¶ 12. That certainly is not the case here where the lineup was never introduced in evidence at trial

or relied on for conviction.

Ground Two is without merit.


**Ground Three:  *Mens Rea* on the Weapons Under Disability Count**


In his Third Ground for Relief, Dalmida claims he was deprived of various constitutional

rights when the jury was not instructed about the elements of constructive possession for the

weapons under disability charge and therefore never found either constructive possession or the

requisite *mens rea* for the weapons charge (Reply, ECF No. 16, PageID 1402).

The First District dealt with this and other related issues as follows:

[*P14]  In his fourth, fifth, sixth, and seventh assignments of error, Dalmida essentially argues his conviction for having weapons under disability violated his constitutional rights, because the evidence was insufficient, he was not properly indicted, and the jury was not properly instructed on constructive possession. At issue here is whether Dalmida was convicted of having weapons under disability because of his disability, since Pryor was the only person who actually held and fired the gun.

[*P15]  A person who has been convicted of felony-drug possession is not permitted to knowingly acquire, have, carry, or use any firearm or dangerous ordnance, unless relieved from that disability. R.C. 2923.13(A)(3). Neither party disputes that it was Pryor who possessed the firearm, which he used to assault, rob, and shoot Hawkins.

[*P16]  An accomplice can be convicted of having weapons under disability without holding the firearm if that accomplice aided and abetted the person who actually possessed and brandished the firearm. *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478; *State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673. A nonshooting accomplice can be convicted for having weapons under disability based on that accomplice's disability, not the disability of the shooter. *Adams* at ¶ 18; *contra State v. Lewis*, 2d Dist. Greene No. 96CA12, 1997 Ohio App. LEXIS 1316 (April 4, 1997) (holding that in order to aid and abet another person in having a weapon under disability, the individual who actually possesses the firearm must be the one with the disability, not the aider and abetter). The accomplice can have constructive possession of the firearm by exercising dominion and control through another. *See State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The record demonstrates that Dalmida had a prior felony conviction, was aware that Pryor possessed the firearm, and directed Pryor to use the firearm to shoot Hawkins.

[*P17]  The jury was instructed on both having a weapon under disability and complicity. Dalmida stipulated that he had a prior felony conviction and the state presented evidence that, while Pryor was the only person to actually possess and fire the gun, Dalmida actively participated in the robbery, yelled orders at Pryor, and

> instructed Pryor to shoot Hawkins. Further, because Dalmida never
> requested a jury instruction on constructive possession and did not
> object to the jury instructions given at trial, this issue must be
> reviewed under the plain-error standard. *See* Crim.R. 30(A); *Dixson,*
> 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, at ¶ 21.
> Dalmida has not demonstrated that the outcome of his trial would
> have been different if the jury had been instructed on constructive
> possession.

*Dalmida,* 2015-Ohio-4995. The First District does not advert to any claim the instructions were erroneous for failure to instruct on *mens rea*. *Id.* at ¶ 14. However, that is the claim that is made in Appellant's Amended Brief (State Court Record, ECF No. 13, PageID 270).

Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations. See *Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose,* 527 F.2d 524 (6th Cir. 1975). Petitioner cites no Supreme Court holding to the effect that failure to instruct on constructive possession in these circumstances is constitutional error. In fact, the merits argument on Ground Three contains no Supreme Court references at all. In the Procedural Analysis section of the Reply, Petitioner cites *Neder v. United States*, 527 U.S. 1 (1999)(ECF No. 16, PageID 1379). The case is cited for the proposition that failure to instruct on an element – there, materiality – constitutes structural error, but that is not the holding of the case. Rather, the Supreme Court found omission of instruction on that element was subject to harmlessness analysis and remanded for the lower court to perform that analysis. In fact, the Court held "[t]he error at issue here – a jury instruction that omits an element of the offense – differs markedly from the constitutional violations we have found to defy harmless-error review." *Id.* at 8.

Moreover, the First District found that no constructive possession instruction had been requested and it therefore reviewed the claim for plain error. *Dalmida, supra*, at ¶ 17. As noted

above, plain error review is enforcement of the Ohio rule requiring contemporaneous objection. On plain error review, the First District found Dalmida had not shown that the outcome of his trial would likely have been different if the appropriate instruction had been given. *Dalmida, supra,* ¶ 17.

Constitutional error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). A federal court may grant habeas relief only if a constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict. *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir.), *cert. denied*, 135 S.Ct. 876 (2014). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). Here, as the First District found, the jury had heard Hawkins testify that Dalmida told Pryor, the shooter, to shoot Hawkins. Given that state of the evidence, the Magistrate Judge concludes omission of the constructive possession instruction did not affect the outcome of the trial. Ground Three should be dismissed.

**Ground Four: Improper Indictment for Weapons under Disability**

In his Fourth Ground for Relief, Petitioner asserts he was not properly charged with having a weapon under disability.[1] The First District decided this claim as follows:

---

[1] Petitioner pleads Grounds Four, Five, and Six as "alternate theories of this same error raised in Ground for Relief 3, but account for different constitutional violations." (Reply, ECF No. 16, PageID 1407.)

[*P18] Dalmida also claims the indictment was improper, because it charged him individually for having a weapon under disability when the state's theory was actually based on complicity. But, as the state points out, "A charge of complicity may be stated in terms of [the complicity statute itself] or in terms of the principal offense." R.C. 2923.03(F). That statute "adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." *State v. Herring*, 94 Ohio St.3d 246, 251, 2002 Ohio 796, 762 N.E.2d 940 (2002). Thus, a defendant charged with an offense may be convicted on proof that he was complicit in its commission, even if the indictment describes the offense in terms of the principal offense and does not mention complicity.

*Dalmida*, 2015-Ohio-4995. Thus the First District decided as a matter of state law that the indictment was proper.

Of course, a state criminal defendant is not entitled by the Constitution to indictment by a grand jury at all. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n.25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). "[T]here is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Williams*, 467 F.3d at 534, citing *United States v. Cotton*, 535 U.S. 625, 627 (2002), and *Rose v. Mitchell*, 443 U.S. 545, 557, n.7 (1979). "Due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams* at 535, quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Petitioner does not argue the merits of Ground Four in terms of lack of adequate notice to prepare a defense (Reply, ECF No. 16, PageID 1407-08). Instead he argues in terms of a number of federal precedents about variance of the evidence at trial from the indicted charges. *Id.* at PageID 1408, n. 19. None of them are cases recognizing a federal constitutional obligation on the States.

**Ground Five:  Insufficient Evidence of Weapons under a Disability**


In his Fifth Ground for Relief, Dalmida asserts there was insufficient evidence presented to convict him of having a weapon while under a disability.  As with Grounds Four and Five, he posits this as an "alternate theory" for the claim made in Ground Three.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

Petitioner submitted this claim to the First District as his Sixth Assignment of Error on

direct appeal, citing the appropriate United States Supreme Court precedent (Appellant's Amended Brief, State Court Record, ECF No. 13, PageID 259). The First District decided this claim on the merits, essentially by holding that the State did not have to prove actual possession of the firearm by Petitioner and that its proof of constructive possession was sufficient because it offered sufficient evidence from which the jury could conclude that the firearm in Pryor's possession was under Dalmida's effective control because Pryor followed orders about how to use it. This decision is neither contrary to nor an objectively unreasonable application of *Jackson*. Petitioner's Fifth Ground for Relief is therefore without merit.

**Ground Six: Fatal Variance or Constructive Amendment of the Indictment**

As yet another alternate theory regarding the weapons under disability charge, Petitioner asserts there was a fatal variance in the evidence presented from the charge made and/or a constructive amendment of the indictment. Because there is no federal constitutional right to grand jury indictment, Ground Six does not state a claim upon which habeas corpus relief can be granted.

**Ground Seven: Appearance at Trial in Jail Uniform**

In his Seventh Ground for Relief, Dalmida asserts he was deprived of his rights to a fair trial, an impartial jury, and the presumption of innocence by being forced to stand trial in his jail uniform. This was Dalmida's eighth assignment of error on appeal which the Frist District decided

as follows:

**IV. Jail Uniform**

[*P20]  In his eighth assignment of error, Dalmida claims the trial court erred by "forcing him to stand trial before a jury while wearing his jail uniform."

[*P21]  Nothing in the record indicates that Dalmida requested and was denied a recess or continuance in order to obtain different clothing. Further, the portions of the record Dalmida identifies as evidence that he "made clear on the record that he did not wish to appear in his jail uniform," include the judge telling prospective jurors to ignore the fact that Dalmida was wearing "garb from the Justice Center." The other is a statement Dalmida made at sentencing, which is obviously after the trial had been completed. There is no evidence that Dalmida ever objected or communicated that he wanted different clothing until sentencing. Therefore, the standard here is plain error. Because the judge told the jurors to disregard the fact that Dalmida was wearing his jail uniform, this court must presume the jurors followed those instructions. *See State v. Fears*, 86 Ohio St.3d 329, 334, 1999 Ohio 111, 715 N.E.2d 136 (1999). Dalmida's eighth assignment of error is overruled.

*State v. Dalmida,* 2015-Ohio-4995.

Dalmida reiterated this claim in post-conviction.  On appeal the First District held:

Finally, Dalmida contended in his sixth and seventh claims that the trial court had denied him due process, a fair trial, and the presumption of innocence "by forcing him to stand trial before a jury while wearing his jail uniform," and that trial counsel had been ineffective in failing to object. We rejected those challenges in Dalmida's direct appeal, upon the presumption that the jurors had heeded the trial court's instruction to disregard his attire and our conclusion that counsel's failure to object did not constitute an outcome-determinative deficiency. *See Dalmida*, 1st Dist. Hamilton No. C-140517, 2015-Ohio-4995, at ¶ 20-23. Those determinations were unaltered by the outside evidence submitted by Dalmida in the form of affidavits made by Dalmida and his wife averring that he had intended, and had arranged, to appear at trial in "street clothes." Consequently, under the doctrine of the law of the case, the common pleas court was constrained by our decision in his direct appeal from granting relief upon the sixth and seventh claims. *See Nolan v.*

*Nolan,* 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984); *Alexander-Patterson Assoc., Inc. v. E.F. McDonald Co*., 1st Dist. Hamilton No. C-850404, 1989WL11843 (Oct. 22, 1986).

(*State v. Dalmida*, Case No. C-160674 (1st Dist. Ct. App. Dec. 29, 2017) (unreported, available at State Court Record, ECF No. 13, PageID 525-26.))

Dalmida asserts these state court decisions are contrary to controlling Supreme Court precedent, *Estelle v. Williams,* 425 U.S. 501 (1976). In *Estelle,* the Supreme Court reversed a grant of habeas corpus to an inmate who was tried in jail clothing, declining to adopt a *per se* rule. Instead it found no violation where the defense had not objected before or at any time during trial.

The First District found on direct appeal that the record did not show any request for a continuance to change into street clothes. To rebut that finding, Petitioner points to a statement by Dalmida that he had not been permitted to change (Reply, ECF No. 16, PageID 1415, citing State Court Record, ECF No. 13, PageID 1277). However, the statement made at that point was neither before nor during trial as required by *Estelle*, but during sentencing.

Petitioner points to the fact that he submitted this issue again to the trial court as part of his petition for post-conviction relief. The purpose of such a petition, of course, is to present constitutional defects in a conviction that are supported by evidence outside the record. The affidavits purport to prove that Dalmida wanted to appear in street clothes and followed the proper jail procedures to make that possible (See Affidavits of Grady Dalmida, Angela Adams, and Michelle Berry, attached to State Court Record, ECF No. 13, Ex. 26, at PageID 439-42.) None of them purport to show that Dalmida ever made an objection to the trial judge about appearing in

28

jail clothing, which is a prerequisite to an *Estelle* violation.  Whether or not Ohio law of the case

doctrine prevented the Common Pleas Court from considering these Affidavits, they do not on

their face show an *Estelle* violation.

Ground Seven should be dismissed on the merits.


**Ground Eight:  Ineffective Assistance of Trial Counsel**


In his Eighth Ground for Relief, Petitioner pleads ten sub-claims of ineffective assistance

of trial counsel.

In general, the governing standard for ineffective assistance of trial counsel was adopted

by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel was
> not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing*

*Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Petitioner raised ineffective assistance of trial counsel as his ninth assignment of error on direct appeal and the First District decided it as follows:

### V. Ineffective Assistance

[*P22] In his ninth assignment of error, Dalmida contends his trial counsel provided constitutionally ineffective assistance of counsel. To succeed on his claim of ineffective assistance of counsel, Dalmida must show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense such that he was denied a fair trial. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1985), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Dalmida claims his trial counsel's performance fell below an objective standard of reasonableness when he failed to present evidence

regarding law enforcement's failure to follow the photo-lineup procedure, present evidence that Hawkins had identified another suspect, admit the photo lineups into evidence,   request a jury instruction on law enforcement's failure to follow the photo-lineup procedure, object to the jury instructions and/or indictment regarding the charge of having a weapon while under disability, object to Dalmida appearing at trial in his jail uniform, and object to the court's improper sentence.

[*P23]  But Dalmida does not explain how these failures fell below the objective standard of reasonableness or how he has been prejudiced. Counsel extensively cross-examined the officers with regard to the steps taken in the photo lineup. The trial court merged several of the counts at sentencing, demonstrating that the court performed a merger analysis and determined which counts it believed should merge. Importantly, Dalmida has failed to demonstrate "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *See Bradley at 142.* Therefore, Dalmida's ninth assignment of error is overruled.

*State v. Dalmida*, 2015-Ohio-4995.

Petitioner does not argue the merits of his Eighth Ground for Relief in his Reply, but refers the Court to his Petition (ECF No. 1-1) where Ground Eight is presented at PageID 70-77.  At that place, having listed his ten sub-claims,[2] he gives three examples of ineffective assistance of trial counsel.  He notes that ineffective assistance of trial counsel can occur when a trial attorney fails to make a critical objection.  *Id*. at PageID 70, citing *Gravley v. Mills*, 87 F.3d 779 (6th Cir. 1996).  Failure to object to improper jury instructions can also constitute ineffective assistance of trial counsel.  (ECF No. 1-1, PageID 70, citing *Corsa v. Anderson*, 443 F. Supp. 176 (E.D. Mich. 1977).)  Petitioner's final example is failure to object "to a jury instruction that rendered meaningless the defendant's entire defense."  *Id.* at PageID 70-71, citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999).

---

[2] Only six were presented to the First District (Appellant's Amended Brief. State Court Record, ECF No. 13, PageID 280-81.)

In reversing the Sixth Circuit's grant of habeas relief on an ineffective assistance of trial counsel claim in a death penalty case, the Supreme Court held

> The Sixth Amendment entitles criminal defendants to the "effective assistance of counsel"--that is, representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland* v. *Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann* v. *Richardson*, 397 U.S. 759, 771, n. 14 (1970)). That standard is necessarily a general one. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." 466 U.S., at 688-689. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place. *Id.*, at 688.

*Bobby v. Van Hook*, 558 U.S. 4 (2009)(parallel citations and some internal quotation marks omitted).

The Magistrate Judge concludes the First District's decision is not an objectively unreasonable application of *Strickland* and its progeny. Petitioner made no effort to present to the First District what the prevailing professional norms were on the six sub-claims of ineffective assistance of trial counsel he made. For example, one may ask, "What was the prevailing professional norm on obtaining a gunshot residue expert when it was admitted by Defendant that he was present and conceded by the State that he was not the shooter?" or "Why would competent defense counsel move for admission in evidence a photo lineup from which his client was identified?"

As the First District also found, Dalmida made no showing of prejudice to the standard required by *Strickland*, to wit, that there is a reasonable probability the outcome would have been different. The basis for the Supreme Court's holding about civilian clothing in *Estelle* is to protect

32

the presumption of innocence from an adverse inference from the jail clothing. But Dalmida took the stand, placing his credibility in issue, and was compelled to admit he had a felony conviction, ordinarily a far more powerfully impeaching fact than mere jail clothes.

Dalmida suggests that the jury would have believed his narrative about being a bootleg cab driver as his reason for being present, but he points to no corroboration of that claim. He could have subpoenaed Pryor as a witness who could have corroborated the whole Good Samaritan theory, but never called Pryor to testify.[3]

Because the First District's decision is not an objectively unreasonable application of *Strickland*, Ground Eight should be dismissed.

**Grounds Nine and Ten: Double Jeopardy**

In his Ninth Ground for Relief, Petitioner claims he was deprived of the constitutional protection against double jeopardy when the weapon under disability charge was not merged with "all the robbery and felonious assault counts." (ECF No. 1-1, PageID 77.) In the Tenth Ground he claims the same deprivation for the failure to merge all the robbery and felonious assault counts. *Id*. at PageID 81.

Dalmida combined these claims in bis tenth assignment of error on direct appeal. The First District decided as follows:

**VI. Merger**

---

[3] Pryor pleaded guilty well before Dalmida was tried and would have been protected by the Double Jeopardy Clause from any harm from admissions he might have made. Pryor was subpoenaed for earlier settings of the Dalmida trial, but not for the date when it actually went forward.

[*P24]  In his tenth assignment of error, Dalmida claims that the trial court erred by convicting him of multiple offenses based on the same conduct, because the offenses should have been merged. Under R.C. 2941.25, offenses merge when the defendant's conduct can be construed to constitute two or more allied offenses of similar import, and the conduct establishes that the offenses were not committed separately or with a separate animus.

[*P25]  To determine whether allied offenses merge under R.C. 2941.25, courts must consider the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. The Ohio Supreme Court recently explained that an "allied-offenses analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. A defendant can be convicted of multiple offenses for the same conduct if any one of the following is true: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at ¶ 25.

[*P26]  Dalmida maintains that the felonious-assault, having-weapons-under-disability, and aggravated-robbery counts merge, because the convictions are based on his sole conduct of acting in concert with Pryor to assault Hawkins with a firearm. The court merged the robbery with the aggravated robbery, and merged the two felonious assaults. Because this case involved only one victim, in looking at Dalmida's conduct, we must answer the following questions: (1) are the offenses dissimilar in import, in other words, whether the harm that resulted from the aggravated robbery, felonious assault, and having weapons under disability was separate and identifiable, (2) whether the offenses were committed separately, or (3) whether the offenses were committed with separate animus or motivation. If we answer any one of the three questions in the affirmative then the offenses are not allied offenses and are not subject to merger. *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 83.

A. Merger of Felonious Assault with Aggravated Robbery

[*P27]  The record is clear that the aggravated robbery and felonious assault were committed separately. To adequately examine whether

the offenses are subject to merger, we must look at Dalmida's conduct in the context of the statutory elements.

[*P28]   The pertinent aggravated robbery statute, R.C. 2911.01(A)(1), provides that,

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

The relevant felonious assault statute, R.C. 2903.11(A)(2), provides that, "No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

[*P29]  The use of a gun to rob Hawkins satisfies the elements of aggravated robbery. Pryor displayed the gun and both Dalmida and Pryor demanded drugs and money from Hawkins. After Hawkins told Dalmida and Pryor that he did not have any drugs or money, Dalmida and Pryor ripped the pockets off Hawkins's pants. Finding no drugs or money, they took his cell phone. Then, Dalmida told Pryor to shoot Hawkins. Shooting Hawkins was not in furtherance of the aggravated robbery, because the robbery had already been completed. Thus, because the aggravated robbery and felonious assault were committed with separate conduct, the offenses do not merge.

B. Merger of Weapons Under Disability with Felonious Assault and Aggravated Robbery

[*P30]   Dalmida's constructive possession of the firearm is sufficient to meet the weapons-under-disability statute. However, Dalmida claims the weapons-under-disability count is an allied offense of similar import that must merge with the aggravated robbery and felonious assault. We disagree.

[*P31]   The relevant weapons-under-disability statute, R.C. 2923.13(A)(3), provides that a person who has been convicted of a felony involving illegal drug possession, shall not "knowingly acquire, have, carry, or use any firearm or dangerous ordnance."

[*P32]   Offenses are of dissimilar import if the harm that results from each offense is separate and identifiable. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26; *see State v. Earley*, Ohio St.3d, 2015-Ohio-4615, N.E.3d, ¶ 15. This court has previously held that having weapons while under disability is of a dissimilar import from other offenses "because the statute manifests a legislative purpose to punish the act of possessing a firearm while under a disability separately from any offense committed with the firearm." *See State v. Bates*, 1st Dist. Hamilton No. C-140033, 2015-Ohio-116, ¶ 30. The underlying purpose of criminalizing having weapons while under disability is to protect the general public from the increased risk of harm of armed criminals. *See State v. Rice*, 69 Ohio St.2d 422, 427, 433 N.E.2d 175 (1982).

[*P33]   The offenses of aggravated robbery and felonious assault have different import and significance than merely having a weapon while under disability. The offense of having a weapon while under disability occurs when a person who is under indictment for or has been convicted of a felony offense of violence or involving illegal drugs, acquires, has, carries, or uses a firearm. R.C. 2923.13(A). This import is separate and identifiable both from Dalmida's use of the gun to relieve Hawkins of his property and his use of the gun to cause Hawkins physical harm. Therefore, we hold that the harm that resulted from each offense was separate and identifiable, and, thus, the offenses do not merge. Dalmida's tenth assignment of error is overruled.

*State v. Dalmida*, 2015-Ohio-4995.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy protection at issue here is the protection against multiple punishments for the same offense.

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). See also, *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), citing *Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe,* citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010)(rejecting *Rance*'s call for a comparison of statutory elements solely in the abstract and acknowledging "[w]hen determining

whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.").

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

It is obvious from the face of the statutes that aggravated robbery, felonious assault, and having weapons under disability have different elements. The factual finding of the First District that the aggravated robbery was over before the felonious assault is a reasonable construction of the evidence. That is, having obtained no drugs or money from Hawkins by threatening him with the gun, Pryor and Dalmida decided to shoot him anyway.

The First District's decision of the tenth assignment of error is not an objectively unreasonable application of the relevant Supreme Court precedent. Grounds Nine and Ten should be dismissed.

**Grounds Eleven, Twelve, Thirteen, and Fourteen:  The GSR Evidence**

In his Eleventh Ground for Relief, Dalmida claims the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the work product or case notes underlying Michael Trimpe's expert report and testimony[4]. In his Twelfth Ground for Relief he

---

[4] Dalmida attempted to obtain those materials by moving for discovery in this habeas case (ECF No. 19). The Magistrate Judge denied that motion (ECF No. 21) and Dalmida's time to appeal has expired.

asserts his due process rights as recognized in *Napue v. Illinois*, 360 U.S. 264 (1959), were violated when the State presented Mr. Trimpe's testimony. The Thirteenth Ground claims that presenting Trimpe's testimony violated his right to confront the witnesses against him and present a defense. The Fourteenth Ground claims a violation of due process in upholding a conviction based on scientifically unsupportable GSR evidence. Because these four grounds for relief all concern the GSR evidence presented at trial, they will be analyzed together.

The grounds for relief were raised in the state court as claims in the petition for post-conviction relief. In upholding denial of that relief, the First District found that the Kilty Affidavit did not demonstrate that the Trimpe testimony was false. *State v. Dalmida*, Case No. C-160674 (1st Dist. Dec. 29, 2017)(unreported; copy at State Court Record, ECF No. 13, PageID 524). Summarizing the other evidence against Petitioner, the undisclosed case notes were not material. *Id.* Regarding the scientific reliability of the Trimpe evidence, Dalmida relied on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), but the First District noted that *Daubert* was not a constitutional precedent.

The State has a duty to produce exculpatory evidence in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed. *Brady v. Maryland*, 373 U.S. 83 (1963). To achieve this goal, "*Brady* held 'that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995), quoting *Brady*, 373 U.S. at 87.

The Magistrate Judge concurs with the First District's conclusion under *Brady*. The case notes are not themselves before this Court and they apparently were not before the post-conviction

court. Mr. Kilty's affidavit does not say that those notes are exculpatory, but rather that he would need to see them to determine the scientific reliability of Trimpe's testimony and indeed to make his own evaluation complete.

Petitioner's argument under *Napue* is very far afield. Presentation of testimony known to be perjured violates a defendant's due process rights. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), citing *Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), citing *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Mere inconsistencies in the testimony will not suffice. Mere inconsistencies in the testimony will not suffice. *Monea v. United States*, 914 F.3d 414 (6th Cir. 2019)(Nalbandian, J.), citing *Lochmondy*. A statement is not "false" within the meaning of *Napue* because another witness, perhaps more expert in the subject matter, finds the opinion exaggerated or not scientifically supportable.

Petitioner does not separately argue the Thirteenth Ground for Relief in his Reply, but refers the Court to the Petition. That Ground is discussed in the Petition at PageID 94-96. Nowhere in that discussion does Petitioner cite any Supreme Court precedent that extends the Confrontation Clause to the point that a defendant has been deprived of his or her rights under that Clause if they

are not given all the materials the witness relies on in forming his or her opinion. In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held lab reports are testimonial within meaning of *Crawford v. Washington*, 541 U.S. 36 (2004). In *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), the Court held that the Confrontation Clause prohibits admission of a certificate of the results of a blood test prepared by a non-testifying lab analyst unless the analyst was subject to cross-examination before trial. But neither of these cases holds that the Confrontation Clause requires a forensic scientists case notes to be made available.[5]

In his Fourteenth Ground for Relief, Dalmida claims he was denied due process because his conviction is based in part on "inaccurate, scientifically unsupportable, and unreliable evidence" regarding the GSR. In presenting this claim to the First District, Dalmida relied on *Daubert, supra*. But *Daubert*, although a leading case on the admissibility of scientific evidence under Fed. R. Evid. 702, did not impose any scientific reliability standard on the States under the Fourteenth Amendment. Ground Fourteen is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

---

[5] A different result would obtain if the case notes were true *Brady* material.

April 11, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).